COURT OF APPEALS
DECISION
DATED AND FILED

July 7, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1831-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF222

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

RICHARD A. TOURTILLOTT,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Shawano County: KATHERINE SLOMA, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 GILL, J. Richard Tourtillott appeals from a judgment of conviction, entered upon his no-contest pleas, for three charges, including one count of causing great bodily harm by the operation of a vehicle with a restricted controlled substance in his blood. On appeal, Tourtillott argues that the circuit court erred by

denying his motion to suppress the results of a blood test obtained pursuant to his consent under WIS. STAT. § 343.305(3) (2023-24).[1] He also renews his challenge to the constitutionality of § 343.305(3)(ar)2.

¶2 We conclude that the circuit court's denial of Tourtillott's motion to suppress was based on a law enforcement officer's reading of the Informing the Accused form pursuant to WIS. STAT. § 343.305(3)(ar)1., not § 343.305(3)(ar)2. Therefore, the issue of § 343.305(3)(ar)2.'s constitutionality is not properly before this court.

¶3 We further conclude that, consistent with *State v. Blackman*, 2017 WI 77, 377 Wis. 2d 339, 898 N.W.2d 774, and *State v. Gore*, 2025 WI App 11, 415 Wis. 2d 279, 18 N.W.3d 198, Tourtillott voluntarily consented to the blood draw because the law enforcement officer had probable cause, at the time he read the Informing the Accused form to Tourtillott, to believe that Tourtillott was driving or operating a motor vehicle while under the influence of an intoxicant (OWI). *See Blackman*, 377 Wis. 2d 339, ¶44; *Gore*, 415 Wis. 2d 279, ¶29; WIS. STAT. § 343.305(9)(a)5. We therefore affirm.

## BACKGROUND

¶4 The State charged Tourtillott with 13 counts, including two counts of causing great bodily harm by the operation of a vehicle with a restricted controlled substance in his blood, after he ran a stop sign while driving his SUV at a high rate

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

The implied consent statute has recently been amended, and WIS. STAT. § 343.305(3)(ar) and (b) have been repealed. *See* 2025 Wis. Act 195, §§ 15-26.

2

of speed and crashed into another vehicle, seriously injuring that vehicle's driver, Tourtillott's passenger, and himself. Tourtillott consented to providing a blood sample following the crash, and test results of that sample showed that he had methamphetamine, amphetamine, and Delta-9 THC in his system.

¶5     Relying on our state supreme court's decision in **Blackman**, Tourtillott moved to suppress the blood test results on the ground that he was incorrectly informed—by a deputy's reading of the Informing the Accused form[2]—that his operating privilege would be revoked if he refused to provide a blood sample. In addition, Tourtillott filed a separate motion arguing that the deputy read the Informing the Accused form pursuant to WIS. STAT. § 343.305(3)(ar)2. and that this subdivision is facially unconstitutional because it "allows for arrest absent probable cause." (Formatting altered.)

¶6     At a subsequent hearing on Tourtillott's suppression motion, Deputy Brady Sinotte of the Shawano County Sheriff's Office testified that while responding to an unrelated matter at around 10:00 p.m. with his squad car's emergency lights activated, he observed an SUV in front of him traveling in the same direction at "a very high rate of speed." Sinotte stated that he was traveling between 75 and 80 miles per hour, which is "over twice the speed limit in that area," but he "was not catching up to that vehicle." Using his "moving radar unit," Sinotte registered the SUV's speed at 89, 93, and then 94 miles per hour, meaning that the SUV was accelerating "and continued to do so as it pulled out of range of the radar." Sinotte lost sight of the SUV on a curved portion of the road but

---

[2] "The form is set forth verbatim in WIS. STAT. § 343.305(4)." **State v. Blackman**, 2017 WI 77, ¶17 n.4, 377 Wis. 2d 339, 898 N.W.2d 774.

testified that a "short period" later he discovered a "high speed traffic crash" at an intersection involving the SUV and another vehicle.

¶7 Deputy Sinotte further stated that upon arriving at the crash scene, he approached the SUV first because he "wanted to detain the driver … based on the fact that [he] felt that [the driver] was attempting to elude." An individual seated in the passenger seat of the SUV informed Sinotte that the driver of that vehicle, later determined to be Tourtillott, had fled the crash scene on foot. Afterward, Sinotte discovered that the other vehicle was "heavily damaged" and that the driver of that vehicle was "significantly injured," unconscious, and had "difficulty breathing." Sinotte's initial assessment of the crash was that the driver of the SUV had "T-bone[d]" the other vehicle, and he stated that "[t]here is a stop sign which controls the traffic" from where the SUV entered the intersection.

¶8 Deputy Sinotte then testified that he began searching for Tourtillott once the individuals at the crash scene had obtained medical attention. Soon after starting his search, Sinotte discovered Tourtillott unconscious in a ditch approximately 50 feet from the crash. Sinotte further stated that "upon approaching" Tourtillott, he could "smell an odor of intoxicant emitting from his person." Tourtillott soon regained consciousness and, according to Sinotte, "began complaining of relatively serious injuries." Sinotte testified that emergency medical personnel transported Tourtillott to a hospital "shortly after" his "initial contact" with Tourtillott. Based on his observations of Tourtillott's driving, the crash, and the odor of intoxicants, Sinotte believed that "there might be an issue with respect to an OWI[-]type of investigation."

¶9 Deputy Chase Mason, also with the Shawano County Sheriff's Office, testified that he responded to the crash and was present when Tourtillott

was found in the ditch. Mason further stated that Tourtillott was identified as the driver of the SUV and that law enforcement believed he caused the crash. In addition, Mason testified that he detected "an odor of intoxicants from [Tourtillott's] person" while standing next to Tourtillott at the crash scene. As a result of his observations and knowledge of the circumstances surrounding the crash, Mason "began the OWI process" and accompanied Tourtillott to the hospital.

¶10    Once at the hospital, Deputy Mason read Tourtillott the Informing the Accused form "[a]s [Tourtillott] was being attended to by medical personnel." Mason's interactions with Tourtillott following the crash were captured on his body-worn camera. At the suppression hearing, the circuit court admitted the entirety of the recording into evidence. In the recording, Mason can be heard saying to Tourtillott, prior to reading the Informing the Accused form, "[B]ecause you're involved in a crash today, okay, I gotta read this form to you, alright?"

¶11    Deputy Mason also testified that there was not an opportunity to subject Tourtillott to field sobriety tests prior to reading him the Informing the Accused form because Tourtillott's "medical needs were being tended to," "[t]here were people moving in and out of the room," and Tourtillott was wearing a neck brace. Tourtillott consented to providing a blood sample following Mason's reading of the Informing the Accused form.

¶12    The circuit court denied Tourtillott's motion to suppress in an oral ruling. In doing so, the court relied upon Deputy Sinotte's testimony concerning his observations of Tourtillott driving his SUV at a very high rate of speed and crashing into the other vehicle, causing injury to multiple individuals. Additionally, the court noted that both deputies testified that "they had concerns

about [an] intoxicated driver" and "thought they detected the odor of alcohol coming from the defendant." The court also referenced a portion of the first paragraph from the Informing the Accused form[3] and stated that this portion includes "either or language" and that "[t]he incident that we have here clearly qualifies. The court has no doubt that the officers had probable cause, reasonable suspicion, and consent for the blood draw." The court did not address Tourtillott's challenge to the constitutionality of WIS. STAT. § 343.305(3)(ar)2.

¶13 Tourtillott eventually pled no contest to, and was sentenced on, three charges, including one count of causing great bodily harm by the operation of a vehicle with a restricted controlled substance in his blood.

¶14 Tourtillott now appeals.

## DISCUSSION

¶15 "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120 (citation omitted). "We review a question of constitutional fact under a two-step inquiry: First, we will uphold the circuit court's findings of fact unless those findings are clearly erroneous. Second,

---

[3] The portion of the Informing the Accused form referenced by the circuit court states:

> You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both, or you are the operator of a vehicle that was involved in an accident that caused the death of, great bodily harm to, or substantial bodily harm to a person ….

WIS. STAT. § 343.305(4).

we conduct an independent, de novo analysis of the application of constitutional principles to the facts found." *Blackman*, 377 Wis. 2d 339, ¶25.

## I. Constitutionality of WIS. STAT. § 343.305(3)(ar)2.

¶16    To begin, Tourtillott renews his challenge to the constitutionality of WIS. STAT. § 343.305(3)(ar)2., an issue the circuit court did not address. Tourtillott argues that we must address the constitutionality of § 343.305(3)(ar)2. because Deputy Mason was requesting a sample of his blood pursuant to that subdivision, as evidenced by "the Informing the Accused form, the officer's statements to Mr. Tourtillott, and the circuit court's findings." According to Tourtillott, the record demonstrates that his "involvement in an accident and speeding leading up to the crash was the reason for the search."

¶17    We agree with the State, however, that the circuit court did not conclude that WIS. STAT. § 343.305(3)(ar)2. authorized Deputy Mason to request a blood sample from Tourtillott. Nor did the court find that Mason requested a blood sample from Tourtillott based on the violation of "any state or local traffic law." *See id.*

¶18    Although the circuit court did not expressly state which provision of WIS. STAT. § 343.305(3) authorized Deputy Mason's request for consent to a blood draw or under which provision Mason made his request, the court's oral ruling and findings were clearly focused on the deputies' belief that Tourtillott was under the influence of an intoxicant. For example, the court referenced the deputies' suspicion that Tourtillott was intoxicated and caused a crash and the fact that the deputies began "processing a possible OWI" prior to Tourtillott being transported to the hospital. The court's repeated references in its oral ruling to the OWI-nature of the deputies' investigation leads us to conclude that the court

7

implicitly determined that § 343.305(3)(ar)1. authorized Mason to request a blood sample from Tourtillott and that Mason was acting pursuant to that provision.[4]

¶19    The circuit court's findings surrounding the OWI-nature of the deputes' investigation are not clearly erroneous. Both deputies testified at the suppression hearing that they detected the odor of alcohol on Tourtillott following the crash, and Deputy Mason further testified that as a result of his observations and knowledge of the circumstances surrounding the crash, he "began the OWI process" and accompanied Tourtillott to the hospital. On cross-examination, Mason agreed with defense counsel that probable cause is not a necessary prerequisite to reading the Informing the Accused form in all circumstances,[5] but Mason clarified that he believed that Tourtillott was under the influence "[o]f an intoxicant." We further note that Mason wrote on the Informing the Accused form that Tourtillott was "arrested for a violation of" WIS. STAT. § 346.63(2) (causing injury to another person by operating a vehicle while under the influence of an intoxicant or controlled substance).[6] The Informing the Accused form did not reference a traffic violation.

---

[4] This conclusion is further supported by the circuit court's decision not to address the constitutionality of WIS. STAT. § 343.305(3)(ar)2.

[5] Ostensibly, defense counsel was referring to WIS. STAT. § 343.305(3)(ar)2. in his question to Deputy Mason. We emphasize that while § 343.305(3)(ar)2. does not require probable cause that a driver is under the influence for an officer to request a blood draw, our state supreme court held in **Blackman** that without probable cause that a driver is under the influence, the driver's consent to a blood draw pursuant to § 343.305(3)(ar)2. is involuntary. **Blackman**, 377 Wis. 2d 339, ¶¶44, 51, 64-66.

[6] The State does not argue that Deputy Mason requested Tourtillott's consent to a blood draw pursuant to WIS. STAT. § 343.305(3)(a), which permits a law enforcement officer to request that a driver provide a blood sample "[u]pon arrest … for a violation of" a variety of OWI-related offenses, including WIS. STAT. § 346.63(2).

¶20    In short, the circuit court did not conclude that WIS. STAT. § 343.305(3)(ar)2. authorized Deputy Mason's request for Tourtillott's consent to provide a blood sample.  To the contrary, the court's findings were focused on the OWI-nature of the investigation, and it found that law enforcement believed Tourtillott was under the influence of alcohol and that his intoxication played a role in him causing the crash.  *See* § 343.305(3)(ar)1.  Indeed, the record is devoid of any evidence suggesting that Mason requested a blood sample from Tourtillott based on the violation of "any state or local traffic law."  *See* § 343.305(3)(ar)2. The findings underlying the court's conclusion are supported by the record.  For the foregoing reasons, the constitutionality of § 343.305(3)(ar)2. is not properly before this court.[7]  *See State v. Fisher*, 211 Wis. 2d 665, 668 n.2, 565 N.W.2d 565 (Ct. App. 1997) ("A party has standing to challenge a statute if that statute causes that party injury in fact and the party has a personal stake in the outcome of the action.").

---

[7] To the extent that Deputy Mason subjectively believed he was acting pursuant to WIS. STAT. § 343.305(3)(ar)2., we would still avoid the question of that provision's constitutionality. As the State argues, the § 343.305(3) provisions "are not mutually exclusive," and an officer may lawfully act under more than one of the provisions.  Furthermore, courts generally review law enforcement actions in the Fourth Amendment context through an objective lens.  *See State v. Brown*, 2020 WI 63, ¶25, 392 Wis. 2d 454, 945 N.W.2d 584.  We see no valid reason why we should not apply that general Fourth Amendment principle here.

In addition, because we ultimately agree with the circuit court that WIS. STAT. § 343.305(3)(ar)1. applies under these facts, and we independently conclude that Deputy Mason had probable cause to believe that Tourtillott was driving while under the influence, Tourtillott's consent was voluntary under § 343.305(3)(ar)1., regardless of the constitutionality of § 343.305(3)(ar)2.  *See State v. Scott*, 2018 WI 74, ¶12, 382 Wis. 2d 476, 914 N.W.2d 141 ("A court ordinarily resolves a case on available non-constitutional grounds.").

## II. Voluntariness of consent

¶21    Next, Tourtillott argues that the circuit court erred by denying his motion to suppress the blood test results because, consistent with our supreme court's decision in *Blackman*, his consent to providing the blood sample was coerced by Deputy Mason's reading of the Informing the Accused form. To briefly summarize, *Blackman* and *Gore* dictate that when a blood draw is requested pursuant to WIS. STAT. § 343.305(3)(ar)2., and the Informing the Accused form is read, the voluntariness of a driver's subsequent consent depends on whether law enforcement had probable cause to believe that the driver was driving or operating a motor vehicle while "under the influence." *See Gore*, 415 Wis. 2d 279, ¶29; *Blackman*, 377 Wis. 2d 339, ¶44; § 343.305(9)(a)5.

¶22    The State argues, and we agree, that the holdings in *Blackman* and *Gore* logically extend to a request for a blood draw made pursuant to WIS. STAT. § 343.305(3)(ar)1. If a driver refuses a blood test under § 343.305(3)(ar)1., is arrested under § 343.305(3)(a), and requests a refusal hearing, the State must prove at the hearing "that the officer had probable cause to believe that the driver was driving or operating a motor vehicle 'under the influence.'" *See Blackman*, 377 Wis. 2d 339, ¶44; *Gore*, 415 Wis. 2d 279, ¶29.

¶23    Therefore, we now consider whether Deputy Mason had probable cause, at the time he read the Informing the Accused form to Tourtillott, to believe

that Tourtillott was driving or operating a motor vehicle while under the influence.[8] *See Gore*, 415 Wis. 2d 279, ¶29; *Blackman*, 377 Wis. 2d 339, ¶44.

¶24    In this context, probable cause refers to that quantum of evidence within the arresting officer's knowledge at the time of reading the Informing the Accused form that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant.  *See State v. Lange*, 2009 WI 49, ¶19, 317 Wis. 2d 383, 766 N.W.2d 551.  The probable cause test "is not a high bar."  *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citation omitted).  "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"  *Id.* (citation omitted).  "Probable cause is a 'flexible, common-sense measure of the plausibility of particular conclusions about human behavior.'"  *Lange*, 317 Wis. 2d 383, ¶20 (citation omitted).  "The question of probable cause must be assessed on a case-by-case basis, looking at the totality of the circumstances."  *Id.*

¶25    We conclude that Deputy Mason had probable cause, at the time he read the Informing the Accused form to Tourtillott, to believe that Tourtillott was driving or operating a motor vehicle while under the influence.  Therefore, consistent with both *Blackman* and *Gore*, Tourtillott's consent to providing a blood sample was voluntary.

---

[8] The parties agree that the circuit court did not address this issue.  However, the State contends that we may nonetheless affirm on this ground because "the record is adequate and the parties have had the opportunity to brief the issue on appeal."  *See State v. Rippentrop*, 2023 WI App 15, ¶34, 406 Wis. 2d 692, 987 N.W.2d 801.  Tourtillott does not dispute the State's contention, and, accordingly, we adopt the State's position.  *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979).

¶26   Tourtillott contends that, "[a]t best, the accident, speeding, and the odor of intoxicants may have given the police reason to request a 'preliminary, investigative' breath test or field sobriety tests 'to help determine whether there [was] probable cause to arrest [him for] OWI.'" *See **Jefferson County v. Renz**,* 231 Wis. 2d 293, 314, 316-17, 603 N.W.2d 541 (1999).  He further asserts that many of the common indicators of intoxication were missing from this case.  For example, Tourtillott did not admit to consuming alcohol, and his SUV did not smell of alcohol.

¶27   While it is true that the deputies did not testify that they observed some of the more common indicators of intoxicated driving—such as open containers in Tourtillott's SUV, slurred speech, or Tourtillott's admission to consuming alcohol—probable cause is a flexible and commonsense test, and the absence of certain indicators of intoxicated driving does not end our analysis. "Although evidence of intoxicant usage—such as odors, an admission, or containers—ordinarily exists in drunk driving cases and strengthens the existence of probable cause, such evidence is not required.  The totality of the circumstances is the test." *Lange*, 317 Wis. 2d 383, ¶37.

¶28   In *Lange*, law enforcement did not observe the "common indicators of intoxication that law enforcement officers often detect when investigating whether a driver is intoxicated." *Id.*, ¶23.  Our state supreme court nonetheless concluded that the warrantless blood draw at issue was lawful because law enforcement had probable cause to believe that the driver was guilty of operating a motor vehicle while under the influence of an intoxicant. *Id.*, ¶¶2-3, 5.

¶29   Significant to the court's conclusion was the testimony of two officers who observed the defendant's "wildly dangerous driving." *Id.*, ¶24.  In

particular, the defendant ventured far into the wrong side of the road while traveling about 10 to 15 miles per hour above the 30-mile-per-hour speed limit. *Id.*, ¶¶25, 28. One officer then began to pursue the defendant's vehicle with her squad car's emergency lights activated and "increased her speed, noting at one point that she was traveling 84 miles per hour. Even at that speed, [the officer] was unable to close the gap between her vehicle and the defendant's." *Id.*, ¶26. Ultimately, the defendant drove his vehicle off the road and through a utility pole. *Id.*, ¶27. The court stated that the defendant's "driving was not merely erratic and unlawful; it was the sort of wildly dangerous driving that suggests the absence of a sober decision maker behind the wheel." *Id.*, ¶24.

¶30 The *Lange* court further concluded that, under the circumstances presented, the officers' failure to further investigate the defendant's intoxication following the crash did not weigh against an inference that the defendant was under the influence of an intoxicant. *Id.*, ¶¶34-36. The court stated that "the defendant's collision with the utility pole cut off the law enforcement officers' opportunity for further investigation" because the defendant was "unconscious, bloody, and lying amid a gasoline-soaked crash scene." *Id.*, ¶34. At the hospital following the crash, "the officers discovered that the defendant was still unconscious and was subject to the attention of medical personnel." *Id.*, ¶36. Given the state of the defendant, the officers could not, for example, administer field sobriety tests. *Id.*

¶31 Lastly, the court cited three additional factors that weighed in favor of a conclusion that law enforcement had probable cause to believe that the defendant was operating a motor vehicle under the influence. First, the court explained that an officer's "experience is a consideration" when assessing the totality of the circumstances for probable cause and that one of the officers

13

investigating the defendant prior to the blood draw was a "veteran officer" who had "worked over 100 cases involving the crime of operating while under the influence." *Id.*, ¶30. Second, the court noted the uncontroverted testimony that the officers "encountered the defendant about when Saturday night bar-time traffic arrives" (3:00 a.m.), and the court stated that "[i]t is a matter of common knowledge that people tend to drink during the weekend when they do not have to go to work the following morning." *Id.*, ¶¶9, 32. Third, the court explained that, by the time of the arrest, one of the officers "had discovered that the defendant had a prior conviction for operating a motor vehicle while under the influence of an intoxicant." *Id.*, ¶33.

¶32 The parties dispute the significance of the supreme court's *Lange* decision as applied to the facts surrounding Tourtillott's consent to providing a blood sample. Tourtillott argues that there are numerous differences between the facts giving rise to probable cause in *Lange* and the facts present in this case. For example, he asserts that his driving differed from that in *Lange* because the deputies here did not observe him cross the centerline or drive on the wrong side of the road. He further contends that *Lange* is distinguishable because the crash in this case did not occur "at or around bar time," the deputies were not aware whether he had any prior OWI-related convictions, and the deputies had the opportunity to observe Tourtillott's car for evidence of alcohol consumption but found no such evidence.

¶33 But the exact circumstances giving rise to probable cause in *Lange*, or any of the other cases relied on by the parties, need not be present for law enforcement to have possessed probable cause to believe that Tourtillott was operating a motor vehicle while under the influence. Again, probable cause is a flexible, commonsense test that *must be assessed on a case-by-case basis by*

14

*considering the totality of the circumstances.* ***Id.***, ¶20. Nevertheless, ***Lange*** is undoubtedly helpful to our probable cause analysis in this case given the similar, albeit not identical, fact patterns and the lack of traditional indicators of intoxication in both cases.

¶34 As the State asserts, Tourtillott's driving was the type of wildly dangerous driving observed by the officers in ***Lange***. Prior to the crash, Deputy Sinotte observed Tourtillott driving at a very high rate of speed—namely, in excess of 90 miles per hour where the speed limit was no more than 35 or 40 miles per hour—and accelerating away from Sinotte's squad car despite Sinotte having his emergency lights activated. Shortly thereafter, Tourtillott caused a major accident by running a stop sign. While the deputies did not observe Tourtillott swerving or driving on the wrong side of the road, the fact remains that he was driving nearly 100 miles per hour (more than twice the designated speed limit), he accelerated as Sinotte attempted to pursue him with emergency lights activated, and he ultimately crashed into another vehicle after running a stop sign. Thus, Tourtillott's "driving was not merely erratic and unlawful; it was the sort of wildly dangerous driving that suggests the absence of a sober decision maker behind the wheel." *See **id.***, ¶24.

¶35 Other similarities between the circumstances giving rise to probable cause in ***Lange*** and the circumstances present here include the date and time of the accident and the experience of the deputies. While the incident here occurred around 10:00 p.m., which "is not as significant as when poor driving takes place at or around 'bar time,' it does lend some further credence" to the deputies' suspicion that Tourtillott was driving while intoxicated. *See **State v. Post***, 2007 WI 60, ¶36,

301 Wis. 2d 1, 733 N.W.2d 634. This conclusion is particularly true here because the incident occurred on a weekend night.[9] *See Lange*, 317 Wis. 2d 383, ¶32.

¶36 Consistent with *Lange*, we also consider the deputies' law enforcement experience. Here, Deputy Sinotte had been a law enforcement officer for about eight years, and Deputy Mason had been an officer for about five years, when Tourtillott crashed his SUV into the other car. Based on his observations of Tourtillott's driving, the crash, and the odor of intoxicants, Sinotte agreed that "there might be an issue with respect to an OWI[-]type of investigation." Likewise, as a result of his observations and knowledge of the circumstances surrounding the crash, Mason "began the OWI process" and accompanied Tourtillott to the hospital.

¶37 Furthermore, like the defendant's physical state after the crash in *Lange*, Tourtillott's condition after the crash prevented the deputies from subjecting him to additional investigation. Although Tourtillott regained consciousness after the deputies found him in the ditch, he immediately "began complaining of relatively serious injuries." Deputy Sinotte testified that he had contact with Tourtillott only for "a relatively short period of time" before medical personnel transported Tourtillott to the hospital. Deputy Mason explained that there was not an opportunity to subject Tourtillott to field sobriety tests at the hospital because Tourtillott's "medical needs were being tended to," "[t]here were

---

[9] The day of the week when the crash occurred does not appear in the suppression hearing transcript. The State appears to suggest that we can take judicial notice that the incident occurred on a Friday night because the date of the incident is in the suppression hearing record. Tourtillott does not contest this suggestion, and we therefore take judicial notice of the day of the incident. *See Charolais Breeding Ranches*, 90 Wis. 2d at 108-09.

people moving in and out of the room," and Tourtillott was wearing a neck brace.[10]

¶38 In addition, Deputy Sinotte testified that based on Tourtillott's driving, he believed prior to arriving at the crash scene that Tourtillott "was attempting to elude." Then, after Sinotte arrived at the crash scene, the passenger of the SUV informed Sinotte that Tourtillott had fled the crash on foot. Sinotte testified that upon discovering Tourtillott in the ditch, he placed Tourtillott in handcuffs "based on the fact that he had already fled the scene of a traffic crash."[11]

---

[10] Tourtillott cites the following statement from *State v. Swanson*, 164 Wis. 2d 437, 453 n.6, 475 N.W.2d 148 (1991), *abrogated on other grounds by*, *State v. Sykes*, 2005 WI 48, 279 Wis. 2d 742, 695 N.W.2d 277: "Unexplained erratic driving, the odor of alcohol, and the coincidental time of the incident [with bar closing] form the basis for a reasonable suspicion but should not, in the absence of a field sobriety test, constitute probable cause to arrest someone for driving while under the influence of intoxicants." However, our state supreme court "later clarified that '*Swanson* did not announce a general rule requiring field sobriety tests in all cases as a prerequisite for establishing probable cause to arrest a driver for operating a motor vehicle while under the influence of an intoxicant.'" *State v. Tullberg*, 2014 WI 134, ¶40 n.22, 359 Wis. 2d 421, 857 N.W.2d 120 (quoting *Washburn County v. Smith*, 2008 WI 23, ¶33, 308 Wis. 2d 65, 746 N.W.2d 243); *see also State v. Wille*, 185 Wis. 2d 673, 684, 518 N.W.2d 325 (Ct. App. 1994) ("The *Swanson* footnote does not mean that under all circumstances the officer must first perform a field sobriety test, before deciding whether to arrest for operating a motor vehicle while under the influence of an intoxicant."). "Instead, probable cause is based on the totality of the circumstances on a case-by-case basis." *Tullberg*, 359 Wis. 2d 421, ¶40 n.22.

In a similar vein, Tourtillott cites *County of Jefferson v. Renz*, 231 Wis. 2d 293, 317, 603 N.W.2d 541 (1999), for the argument that we should consider in our probable cause analysis the deputies' failure to request a preliminary breath test (PBT) from him despite being "faced with exactly the sort of situation in which a PBT proves extremely useful in determining whether there is probable cause for an OWI arrest." Tourtillott provides no authority dictating that a PBT is necessary for establishing probable cause for operating a motor vehicle while intoxicated. Although a PBT may be helpful in some OWI-related investigations, the deputies had probable cause in this case without a PBT.

[11] We also note that fleeing the scene reflects a consciousness of guilt on Tourtillott's part. *See State v. Cheers*, 102 Wis. 2d 367, 391, 306 N.W.2d 676 (1981).

¶39 The deputies were also aware, once they identified Tourtillott as the driver before locating him in the ditch, of "in-house records" showing that Tourtillott had a history of "violence towards law enforcement." Given Deputy Sinotte's belief that Tourtillott had attempted to flee the scene, the deputies' knowledge of his history with law enforcement, and Tourtillott's injuries following a high-speed crash, it is reasonable for the deputies to have detained Tourtillott in handcuffs without further investigation while they waited a short period of time for medical personnel to transport him to the hospital. Accordingly, and contrary to Tourtillott's arguments on appeal, the deputies' failure to obtain additional evidence of intoxication at the crash scene or at the hospital before the arrest does not, under the circumstances of the present case, weigh against the inference that Tourtillott was under the influence of an intoxicant. *See Lange*, 317 Wis. 2d 383, ¶36.

¶40 Finally, and significantly, both deputies testified that they detected an "odor of intoxicants" coming from Tourtillott following the crash. *See Tullberg*, 359 Wis. 2d 421, ¶34. Tourtillott argues that we should not consider the odor of intoxicants in our analysis because the circuit court did not credit the deputies' testimony that they smelled an odor of intoxicants coming from Tourtillott. In the alternative, Tourtillott claims that the deputies' testimony is incredible as a matter of law.

¶41 We reject Tourtillott's arguments concerning the circuit court's finding. In its oral ruling, the circuit court credited the deputies' testimony, stating that the deputies "had concerns about [an] intoxicated driver" and "thought they detected the odor of alcohol coming from the defendant." Even if the court's statements in its oral ruling could not be construed as an express finding concerning the deputies' credibility, the statements can certainly be construed as

an implicit finding necessary to the court's probable cause determination. *See State v. Quarzenski*, 2007 WI App 212, ¶19, 305 Wis. 2d 525, 739 N.W.2d 844 ("To the extent the circuit court's conclusions are rooted in the witnesses' credibility, we will accept those determinations. If the court does not make express findings in that regard, we assume it made implicit findings on a witness's credibility when analyzing the evidence." (citation omitted)).

¶42 Moreover, the deputies' testimony regarding the smell of intoxicants is not incredible as a matter of law. *See State v. Jacobs*, 2012 WI App 104, ¶17, 344 Wis. 2d 142, 822 N.W.2d 885 (stating that a reviewing court will accept a circuit court's credibility determinations "unless the testimony relied upon is incredible as a matter of law"). Other than characterizing the deputies' testimony surrounding the smell of intoxicants as "vague" and "identical," Tourtillott's only argument that the deputies' testimony is incredible is that the blood test results demonstrate that no alcohol was detected in Tourtillott's system.

¶43 The State counters that "while that result does not support the officers' observation of the odor of ethanol, it does not mean that the officers' testimony was incredible." According to the State, the test result can be explained by the passage of time between the crash and the blood draw, and the State further suggests that Tourtillott could have smelled like alcohol because he had been at a bar but not indulged in consuming alcohol. Tourtillott does not respond to these arguments, and we deem them conceded. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 108-09, 279 N.W.2d 493 (Ct. App. 1979).

¶44 Based on the totality of the circumstances in this particular case, Deputy Mason had probable cause, at the time he read Tourtillott the Informing the Accused form, to believe that Tourtillott was operating a motor vehicle while

under the influence. The deputies' collective knowledge surrounding Tourtillott's reckless and dangerous driving, the major crash, the time of day on a weekend night, the odor of intoxicants, and the deputies' experience provided a basis to lead a reasonable officer to believe that Tourtillott was operating a motor vehicle while under the influence. Given this conclusion, Tourtillott's consent to provide a blood sample was voluntary, pursuant to **Blackman** and **Gore**.

*By the Court.*—Judgment affirmed.

Not recommended for publication in the official reports.